**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**DIA'MON DALLAS,**

    **Plaintiff,**

v.                                Case No.: 3:19-cv-00567-MMH-JBT

**FIRST COAST TECHNICAL COLLEGE;**
**CHRIS FORCE, Principal of First Coast**
**Technical College; DONNA GARY-DONOVAN**
**Assistant Principal of First Coast Technical**
**College, all in their official and individual**
**capacities,**

    **Defendants.**
_____/

**DEFENDANT FIRST COAST TECHNICAL COLLEGE's MOTION TO DISMISS**
**AMENDED COMPLAINT AND INTEGRATED MEMORANDUM OF LAW**

Defendant, **FIRST COAST TECHNICAL COLLEGE** ("Defendant" or "FCTC"), by and through the undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and M.D. Fla. Loc. R. 3.01(a) and (h), files its Motion to Dismiss Plaintiff's Amended Complaint [*(Doc. 7)*] and states as follows:

**I.     INTRODUCTION**

1. Plaintiff, **DIA'MON DALLAS** ("Dallas" or "Plaintiff"), initiated this action on May 14, 2019 through the filing of her initial Complaint. *(Doc. 1)*. The initial Complaint was not served on the Defendants.

2. On May 15, 2019, the Court issued *sua sponte* its order striking the initial Complaint as a shotgun pleading. *(Doc. 4)*. Thereafter, on May 24, 2019, Plaintiff filed her

Amended Complaint. *(Doc. 7)*. FCTC and the remaining Defendants accepted service of the Amended Complaint on May 31, 2019. *(Doc. 8, Doc. 9, and Doc. 10)*.

    3.    The Amended Complaint contains five counts, as follows:

        **<u>Count I</u> – Violation of the First Amendment – 42 U.S.C. § 1983 and 42 U.S.C. § 1988 – Punishment** *(All Defendants)*

        **<u>Count II</u> – Violation of the First Amendment - 42 U.S.C. § 1983 and 42 U.S.C. § 1988 – School Policies** *(All Defendants)*

        **<u>Count III</u> – Violation of Free Speech Rights – Article I, § 4 of the Florida Constitution** *(All Defendants)*

        **<u>Count IV</u> – Defendants Acted Beyond Their Authority Under Florida State Law, Florida Statutes Title XLVIII and F.S. § 1004.097** *(All Defendants)*

        **<u>Count V</u> – Plaintiff Was Adversely Affected by Defendants' Policy In Violation of Florida Stature § 790.33** *(All Defendants)*

## II.    FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT[1]

    4.    Plaintiff enrolled at FCTC beginning in January 2019. (*Doc. 1, ¶ 17*). On April 24, 2019, Plaintiff was tagged in a Facebook post of a picture of her pointing a gun at the camera. (*Doc. 1, ¶ 23*). A fellow student reported the picture to FCTC officials. (*Doc. 1, ¶ 26*).

    5.    Pursuant to the FCTC Student Code of Conduct, student discipline was initiated against Plaintiff. (*Doc. 1, ¶ 28*). At a meeting with FCTC officials, Plaintiff alleges she was indefinitely suspended from school. (*Doc. 1, ¶ 28*).

---

[1] While Defendant takes issue with certain of the factual allegations contained in the Amended Complaint, the allegations are accepted as true for purposes of this Motion.

    6.    Dallas seeks declaratory and injunctive relief, damages and attorney's fees and costs. *(Doc. 1 at ad damnum clause, pp. 9-10)*.

## III.   BASES FOR DISMISSAL

    7.    Several bases exist for dismissal:

    a.    The Amended Complaint must be dismissed *in toto* because FCTC is not an entity capable of being sued (*See*, § II, *infra, pp. 4-5*).

    b.    <u>Count I</u> and <u>Count II</u> are due to be dismissed since Plaintiff has not alleged sufficient facts to overcome the standards for liability established in <u>Monell v. Dept. of Soc Servs. of the City of New York</u>. (*See*, § III, *infra*, pp. 5-10).

    c.    <u>Count IV</u> must be dismissed with prejudice, since the conduct for which Plaintiff seeks protection occurred off campus; therefore, the Campus Free Expression Act, F.S. § 1004.097, does not apply. (*See*, § IV, *infra, pp. 10-11*).

    d.    <u>Count I</u>, <u>Count II</u> and <u>Count III</u> should be dismissed inasmuch as Plaintiff has failed to attach the picture of the Facebook post in which she was tagged and has failed to allege facts describing the subject matter or object of the free speech in which she claims to have been engaged. (*See*, § V, *infra, pp. 11-15*).

    e.    <u>Count V</u> must also be dismissed since Plaintiff has failed to provide Defendant with fair notice of the specific policy that is subject to the Florida Legislature's preemption statute, F.S. 790.33. (*See*, § VI, *infra, pp. 15-16*).

3

      f.    Finally, the entirety of the Amended Complaint is a shotgun pleading that offends the Eleventh Circuit's mandate that such pleadings be dismissed. (*See*, § VII, *infra, pp. 17-19*).

## MEMORANDUM OF LAW

### I.    Standard of Review for Motions to Dismiss

The Court is well versed in the standards applicable to motions to dismiss; as such, they are not restated here. Rather, the standards are interwoven throughout the various arguments set forth below where applicable.

### II.    Argument and Authority – FCTC is not a Proper Party-Defendant *(All Counts)*

In 1996, the Florida Legislature authorized the creation of charter schools in Florida. *See*, ch. 96–186, § 1, *Laws of Fla.* During subsequent legislative sessions, the structure and various segments of charter school education have been put into place, including charter technical schools. *See*, § 1002.34, Fla. Stat. (2019). A "charter technical school" is a creature of Florida state statute, distinct from school boards and districts, including those school districts in which they are located, which act as the sponsor of the school. *Id.*

FCTC was converted from a public technical school operated by the St. Johns County School District ("School District") to a charter technical school in 2007. *See*, https://fctc.edu/about/. However, financial and other irregularities forced the St. Johns County School Board ("School Board") to take over the operation of FCTC and operate it as a public technical school again. On July 1, 2016, FCTC was no longer operated as a charter

technical school and, instead, was operated by, and became the responsibility of, the School District. *See*, **Exhibit 1**; *see also*, Gregory R. Lulkowski v. St. Johns County Sch. Dist., 2019 WL 2902171 at ** 1-2 (Fla.Div.Admin.Hrgs.) (discussing termination of charter with FCTC).[2] The events in dispute in the case *sub judice* occurred, if at all, after July 1, 2016.

Under the Florida Education Code, district school boards are corporate bodies vested with the authority to sue and to be sued, and, subject to various immunities that apply as a matter of law, are the appropriate entities against whom lawsuits such as this one must be brought. *See*, §§ 1001.40 and 1001.41(4), Fla. Stat. (2019); *see also*, McCalister v. Sch. Bd. of Bay County, 971 So. 2d 1020, 1024 (Fla. 1st DCA 2008) (explaining duties of school boards, including authority to sue and be sued). Accordingly, the Amended Complaint is due to be dismissed for failure to sue the proper party.

**III. Argument and Authority – Even if the School Board is Named as the Party-Defendant, Plaintiff has not Pled Sufficient Facts to Overcome the *Monell* Doctrine** *(Counts I and II)*

As this Court is well aware, while 42 U.S.C. § 1983 provides a forum for addressing the deprivation of constitutional rights, "it is not itself a source of substantive rights," but instead merely provides "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). Thus, at a most basic level:

---

[2] *E.g.*, Maxcess, Inc. v. Lucent Tech, Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002)). Additionally, courts may take judicial notice of public records, because such documents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999) (quoting Fed. R. Evid. 201(b)(2)).

> [t]o state a claim for relief in an action brought under §1983, [a plaintiff] must establish that [he or she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.

*Am. Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A local governmental entity such as the School Board (or, FCTC in the unlikely event the Court finds it is a proper defendant) is a "person" for the purposes of § 1983 liability, and therefore it may properly be a party in a § 1983 action. *Monell v. Dept. of Social Serv. of the City of New York*, 436 U.S. 658, 691 (1978). However, the School Board is not vicariously liable under Section 1983 for the alleged constitutional violations of its employees. *Id.* at 690-91; *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Consequently, plaintiff cannot rely on a *respondeat superior* theory to hold a municipality liable for individual actions of its officers."); *Lopez v. Gibson*, 324 F. Supp. 3d 1239, 1242-43 (M.D. Fla. 2018) (citing *Monell* and noting that "a municipality is never liable under the doctrine of *respondeat superior*.").

In *Monell*, the Supreme Court conducted a detailed analysis of the legislative history of § 1983. The Court found that there was no constitutional impediment to municipal liability; provided, however, that municipal liability under § 1983 could not be imposed based upon *respondeat superior*. In so holding, the Court found:

> Local governing bodies, therefore, can be sued, directly under §1983 for monetary, declaratory, or injunctive relief where…the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers…. Congress did not intend municipalities to be held liable <u>unless action pursuant to official municipal policy of some nature caused</u> the constitutional tort…. <u>We conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory.</u>

6

*Monell*, 436 U.S. at 690-91 (emphasis added); *see also*, <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 402-03, (1997) (governmental entity may not be vicariously liable for the constitutional torts of its employees).[3]

Accordingly, under *Monell*, a local government entity such as the School Board, does not violate an established constitutional right merely by employing alleged constitutional tortfeasors. Instead, municipalities <u>may</u> be held liable <u>only</u> when their official policies or customs cause their employees to violate another person's constitutional rights; municipalities cannot be held vicariously liable for an employee's independent actions. <u>Monell</u>, 436 U.S. at 690-91; *see also*, <u>Dickson v. Burke County</u>, 303 F.3d 1271, 1276 (11th Cir. 2002) (stating that local governmental body may only be liable under § 1983 if the action was undertaken pursuant to official policy that caused a constitutional tort); <u>Greech v. Clayton County</u>, 335 F.3d 1326, 1329 (11th Cir. 2003) (finding that a plaintiff must show that the alleged injury resulted from the *execution* of a municipality's policy or custom); <u>Fullman v. Graddick</u>, 739 F.2d 553, 563 (11th Cir. 1984) (affirming dismissal of claims against city due to plaintiff's failure to plead facts to support municipal liability under <u>Monell</u>).

---

[3] School boards are like any other local government boards for purposes of § 1983 liability. <u>Monell</u>, 436 U.S. at 696; *see also*, <u>Denno v. Sch. Bd. for Volusia Cty</u>, 218 F.3d 1267, 1276 n.9 (11th Cir. 2000) (finding that school boards are local government entities under *Monell*); <u>Bartes v. Sch. Bd. of Alachua Cty.</u>, No. 04-15459, 2005 WL 2764744, at *4 (11th Cir. Oct. 26, 2005) (following *Monell* in finding that defendant school board not subject to *respondeat superior* liability); <u>Riddick v. Sch. Bd. For the City of Portsmouth</u>, 238 F.3d 518, 523 n.3 (4th Cir. 2000) ("In *Monell*, the Court recognized that school boards and municipalities are indistinguishable for purposes of § 1983.") (citing *Monell*, 436 U.S. at 696)).

7

"A custom is a practice that is so settled and permanent that it takes on the force of law." <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." <u>Id</u>. (citation omitted). The policy requirement is designed to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." <u>Grech v. Clayton County</u>, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (*en banc*) (quotation omitted).

Moreover, it is insufficient for a school board's policy to be tangentially related to the alleged violation. The "official policy of custom must be the **moving force** of the constitutional violation in order to establish liability of a government body under § 1983." <u>Cuesta v. Sch. Bd. of Miami-Dade County, Fla.</u>, 285 F.3d 962, 967 (11th Cir. 2002) (citing <u>Gilmere v. City of Atlanta,</u> 737 F.2d 894, 901 (11th Cir. 1984) (internal quotes omitted) (emphasis added)); <u>Fitzgerald v. Barnstable Sch Comm.</u>, 555 U.S. 246, 257-58 (2009) (finding a plaintiff must show that the policy or custom caused the constitutional violation in Equal Protection case).

State law determines whether a person has policymaking authority for purposes of § 1983. *E.g.*, <u>Godby v. Montgomery Cty Bd. of Educ.</u>, 996 F. Supp. 1390, 1404 (M.D. Ala. 1998). Under Florida law, a school board is vested with final policymaking authority for the school district. <u>K.M. ex re. M.M. v. Sch. Bd. of Lee Cty</u>, 150 Fed. Appx. 953, 957 (11th Cir. 2005) (*per curiam*). Thus, in order to state a claim against the School Board under § 1983,

Plaintiff must plead and ultimately establish that the decision to deny him his constitutional rights was: (1) made pursuant to a custom, or (2) made pursuant to a preexisting formal School Board policy, or (3) made directly by the School Board, as the policymaker for the School District, or (4) ratified by the School Board before the decision became final. *Id.*

Aside from using boilerplate language in paragraphs 11 and 12 alleging that co-Defendants Force and Gary-Donovan acted pursuant to an "official policy, practice or procedure of FCTC", the Amended Complaint completely devoid of factual allegations identifying and describing this so-called policy.[4] Moreover, and equally important, the Amended Complaint fails to include crucial factual allegations plausibly suggesting:

- When the School Board (as opposed to FCTC) purportedly adopted the alleged custom, policy and/or practice that led to the First Amendment violation at issue;

- How the specific custom, policy, and/or practice allegedly adopted by the School Board amounted to the "moving force" behind the alleged restriction on First Amendment rights;

- The manner in which the School Board allegedly adopted the "official policy, practice or procedure of FCTC";

- When the School Board allegedly ratified the alleged "official policy, practice or procedure of FCTC"; and

- How the School Board itself was directly involved in creating the alleged "official policy, practice or procedure of FCTC."

---

[4] Under state law, FCTC is not an independent entity with the type of policymaking authority required by *Monell*.

9

Instead, Plaintiff makes bold assertions and injects conclusory statements regarding the alleged policy, practice or procedure, no doubt because no such policy exists. Plaintiff's failure to meet the requirements of <u>Monell</u> is all the more poignant when viewed through the lens of <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). To be sure, under <u>Iqbal</u> and <u>Twombly</u>, Plaintiff has not alleged sufficient facts to plausibly suggest she is entitled to recover against the School Board (or FCTC if the Court finds it may be sued) consistent with <u>Monell</u>.

**IV.    Argument and Authority – The Campus Free Expression Act – F.S. § 1004.097 – Does Not Apply to Off-Campus Conduct (Count IV)**

Section 1004.097, <u>Florida</u> <u>Statutes</u>, the "Campus Free Expression Act" (the "CFEA"), was passed by the Florida Legislature in 2018. The CFEA protects "expressive activity in outdoor areas of campus [which may be done] freely, spontaneously, and contemporaneously as long as the person's conduct is lawful and does not materially and substantially disrupt the functioning of the public institution of higher education or infringe upon the rights of other individuals or organizations to engage in expressive activities." 46 Fla. Jur 2d *Schools, Universities, and Colleges* § 339 (citing § 1004.097(3)(a), <u>Fla</u>. <u>Stat</u>. (2019)). A cause of action is created for violations of the CFEA, including declaratory and injunctive relief, as well as attorney's fees. § 1004.097(4), <u>Fla</u>. <u>Stat</u>. (2019).

The plain and unambiguous language of the CFEA delineates the circumstances under which it applies; namely it is specifically limited to on campus activity. It does not reach general free speech rights, online activity or any activity away from "areas of campus." *See*, *e.g.*, <u>Connecticut Nat. Bank v. Germain</u>, 503 U.S. 249, 254 (1992) (Thomas, J.) ("We

10

have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). The Amended Complaint is clear that the picture of Plaintiff pointing a gun at the camera was taken at "a gun range far away from school grounds" and there is no factual allegation indicating the picture was posted by individuals working at FCTC or on FCTC electronic media. (*Doc. 1, ¶ 3*); *see also*, (*Doc. 1, ¶¶ 2, 7*) (referring to Plaintiff's conduct as occurring off campus).[5]

While the plain text of the CFEA completely forecloses its applicability to the circumstances at issue here, the legislative history of the CFEA confirms its application to on-campus speech only. The House of Representatives' Staff Analysis summary states the CFEA "addresses the issue of free speech on Florida university and college campuses." Staff of Fla. H.R. Comm. on Jud., CS/HB 909 2018 Staff Analysis 4 (final Jan. 31, 2018) (online at myfloridahouse.gov). "It clarifies that an individual's expressive rights may not be infringed upon, and that an institution is prohibited from restricting expressive activities to a particular area of campus and prohibited from designating free speech zones." *Id.*

The Florida Legislature was intentional and specific regarding the activities to which the CFEA applies. Simply stated, the CFEA does not reach the activity or the actions complained of by Plaintiff. Therefore, Count IV is due to be dismissed with prejudice.

---

[5] A copy of the picture is attached to this Motion as **Exhibit 2**.

**V.     Argument and Authority – The Amended Complaint is Completely Devoid of Factual Allegations Placing FCTC on Fair Notice of the Subject Matter or Object of the Purported Speech in Which She Claims to Have Engaged** *(Counts I, III and III)*

In order to state a *prima facie* constitutional violation, a plaintiff must allege that there was a deprivation of a cognizable constitutional right, and that the individual's conduct was a cause-in-fact of the deprivation.  *See*, <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986). While Counts I, II and III are denominated as "free speech" claims arising under the First Amendment to the United States Constitution and Article I, Section 4 of the Florida Constitution, the Amended Complaint is completely devoid of factual allegations identifying the subject matter or object of the Plaintiff's speech, leaving Defendant to only speculate precisely what message Plaintiff was attempting to convey. In support of her First Amendment claim, Count I of the Amended Complaint states:

> 33.     Dallas' purely off-campus Facebook communication with friends constitutes speech protected by the First Amendment to the United States Constitution, as applied to the States through the Due Process Clause of the Fourteenth Amendment.
>
> 34.     A school cannot punish a student for exercising her free speech rights away from school grounds or school activities and on her own private time.
>
> 35.     Moreover, even if schools have the authority to punish students for off-campus, purely personal speech, Dallas' off-campus speech did not cause any material and substantial disruption at the school.

(*Doc. 1 at ¶¶ 33-35*). The "free speech rights" Plaintiff claims were violated are not contained in Count I, or in the factual allegations contained at paragraphs 17 through 31.

Similarly, in Count II, Plaintiff alleges in summary fashion:

> 40.     Schools may not punish students for off-campus speech that is otherwise protected by the First Amendment.

> 41. The FCTC's Code of Conduct is vague and overbroad and resulted in Dallas being disciplined for constitutionally protected speech and/or expressive conduct that occurred off school grounds and in her own personal time.

(*Doc. 1 at ¶¶ 40-41*). The Amended Complaint is silent regarding what kind of speech is at issue and why it is purportedly protected.

Then, in Count III – Plaintiff's claim under the Florida Constitution – the Amended Complaint states:

> 45. The school's code of conduct is vague and overbroad and resulted in Dallas being disciplined for constitutionally protected speech and or expressive conduct that occurred off school grounds and in her personal time.

(*Doc. 1 at ¶ 45*). Again, however, the "constitutionally protected speech" supposedly infringed is not identified.

At a most basic level, *Twombly* and *Iqbal* require the subject matter of the speech to be identified in a complaint. The alleged "speech" is not at all apparent from the picture in which Plaintiff was tagged on Facebook and there is no context whatsoever from which the Defendant may divine what point Plaintiff was trying to make.[6] It is evident from the picture, however, this is not a group of students wearing armbands, the object of which is to protest a war. Nor does the picture portray a couple taking in a day of target practice.

---

[6] While Defendant recognizes that motions to dismiss are to be based on the four corners of a complaint, the picture posted on Facebook is not attached to Amended Complaint, nor is it described in any detail. In this regard, the Amended Complaint is an impermissible shotgun pleading and is on this point alone subject to dismissal. So that the Court may analyze the substance of the claims, the picture is attached as **Exhibit 2** to this Motion. A court reviewing a motion to dismiss is ordinarily limited in its review to the face of the complaint, however "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b) (6) dismissal." *Brooks v. Blue Cross and Blue Shield of Fla, Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997); *see also*, Fed. R. Civ. P. 10(c).

Rather, the picture shows Plaintiff dressed in her FCTC uniform squatting or kneeling, with a male standing above her, while the Plaintiff points a gun squarely at the camera. The male figure is holding what appears to be cash in one hand and a gun in his other hand. The caption states:

**She my Bonnie (emoji) I'm Her Clyde know we down to
Ride or Die (multiple emojis)**

The only explicit reference contained in the Facebook post is to the infamous Bonnie and Clyde crime duo.[7] The story of Bonnie and Clyde involves the criminal acts of a couple set in the early 20th Century who go on a shooting spree that ends with what is essentially a suicide pact when they are killed in a police ambush. The cinematic portrayal of Bonnie and Clyde includes one of the poems written by Bonnie Parker:

> Some day they'll go down together;
> They'll bury them side by side;
> To few it'll be grief--
> To the law a relief--
> But it's death for Bonnie and Clyde.

https://sfy.ru/?script=bonnie_and_clyde at p. 113.

The picture for which Plaintiff was discipline does not contain any message protected by the First Amendment. Instead, it glorifies the criminal acts of an infamous couple who commit robbery and go on a shooting spree. It is not even clear that Dallas and the male in the picture are at a gun range but for the allegation clarifying that fact in paragraph 3.

In any event, it is incumbent on the Plaintiff to provide more detail so that the Defendant and this Court are able to analyze whether what is portrayed in the picture is speech at all and, if it is, whether it is speech protected by the United States and Florida

---

[7] *See*, https://www.fbi.gov/history/famous-cases/bonnie-and-clyde

Constitutions. Therefore, Counts I, II and III should be dismissed for failing to state a claim under 42 U.S.C. § 1983, the First Amendment and the Florida Constitution.

### VI. Argument and Authority – Count V Fails to Allege Sufficient Facts to State a Claim Under F.S. § 790.33

Section 790.33 of the Florida Statutes preempts the regulation of firearms in favor of the Florida Legislature. In this regard, subsections (1) and (2) of Section 790.33 states:

> **(1) Preemption.--**Except as expressly provided by the State Constitution or general law, the Legislature hereby declares that it is occupying the whole field of regulation of firearms and ammunition, including the purchase, sale, transfer, taxation, manufacture, ownership, possession, storage, and transportation thereof, to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules adopted by local or state government relating thereto. Any such existing ordinances, rules, or regulations are hereby declared null and void.
>
> **(2) Policy and intent.--**
> (a) It is the intent of this section to provide uniform firearms laws in the state; to declare all ordinances and regulations null and void which have been enacted by any jurisdictions other than state and federal, which regulate firearms, ammunition, or components thereof; to prohibit the enactment of any future ordinances or regulations relating to firearms, ammunition, or components thereof unless specifically authorized by this section or general law; and to require local jurisdictions to enforce state firearms laws.

§ 790.33(1) & (2), Fla. Stat. (2019).

The Amended Complaint alleges in cursory fashion that FCTC has enacted a "regulation, measure, directive, rule, enactment, order, or policy to discipline students for possessing firearms." (*Doc. 1 at ¶ 54*). However, as with other defects noted in this Motion, the Amended Complaint does not cite, quote or attach the "regulation, measure, directive, rule, enactment, order or policy" enacted by the School Board and upon which Count V is

based. To the extent Plaintiff relies on the Student Code of Conduct, she should be required to cite the section or specific policy challenged in the Amended Complaint.

Regardless of whether Plaintiff is, in fact, referring to the Student Code of Conduct, it is plain she believes that Florida school districts are absolutely powerless to regulate school safety so long as a gun is involved. Nothing could be further from the truth. In fact, while this case is pending, a statewide grand jury is in the middle of a comprehensive investigation and review of the actions of school districts vis-à-vis school safety following the mass shooting at Marjorie Stoneman Douglas High School on February 14, 2018. To contend that any school may only address school safety situations involving guns, many of which occur instantaneously, after first sorting through the volumes of the Florida Statutes to ascertain whether the Legislature has preempted a specific issue is simply not the law of this State, nor should it be. Both the Florida Constitution and provisions of the Florida Education Code place district school boards squarely in control over their schools. *See*, *e.g.*, Art. IX, § 4(b), Fla. Const. ("The school board shall operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits prescribed herein. Two or more school districts may operate and finance joint educational programs.") and § 1001.32(2), Fla. Stat. (2019) ("District school board.--In accordance with the provisions of s. 4(b) of Art. IX of the State Constitution, district school boards shall operate, control, and supervise all free public schools in their respective districts and may exercise any power except as expressly prohibited by the State Constitution or general law.").

16

### VII. Argument and Authority - The Amended Complaint is an Impermissible Shotgun Pleading

In the unlikely event the Court does not dismiss the Amended Complaint for the reasons set forth in the preceding Sections, Plaintiff's Amended Complaint must nevertheless be dismissed because it is shotgun pleading that violates Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In turn, Rule 10(b) requires that Plaintiff state his claims in numbered paragraphs limited as far as practicable to a single set of circumstances and each claim founded on a separate transaction or occurrence must be stated in a separate count.

The upshot of the multitude of decisions decrying the use of shotgun pleadings is that a defendant is entitled to fair notice of the claims brought against it. The Eleventh Circuit has repeatedly condemned these types of pleadings. *See*, *e.g.*, *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1356-57 (11th Cir. 2018); s*ee also, Weiland*, 792 F. 3d at 1321 (collecting the more than 60 published Eleventh Circuit decisions criticizing shotgun pleadings and summarizing the categories of pleadings that fall into each category); *Lampkin-Asam v. Volusia County Sch. Bd.*, 261 Fed. App'x 274, 277 (11th Cir. 2008), *cert. denied*, 129 S.Ct. 50 (2008) (citation omitted).

First, the Amended Complaint is a shotgun pleading because it ascribes the conduct of certain of the co-Defendants with other co-Defendants without any factual support for doing so. Indeed, there are no separate, specific allegations against FCTC; rather, Plaintiff simply attempts to hold FCTC responsible for the alleged acts of its employees. This pleading practice is not permitted in the Eleventh Circuit. *See, e.g.*, *Magluta v. Samples*, 256

F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."); *see also, Kabbaj v. Obama*, 568 Fed.Appx. 875, 880 (11th Cir. 2014) (finding improper shotgun pleading where "the complaint refers to the defendants collectively, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct").

Additionally, in all five Counts, Plaintiff merely reincorporates paragraphs 17-31 without any designation as to which paragraphs apply to which count or to which defendant. This is not permitted either. *See, Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (stating a type of shotgun pleading is one that commits the "rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants is responsible for which acts or omissions, or which of the defendants the claim is brought against."); *see also, Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1330 n. 22 (11th Cir. 2004) (finding a shotgun pleading where "[m]any [counts] adopt the material allegations of the preceding counts or paragraphs such that some counts appear to state more than one cause of action"); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n. 9 (11th Cir. 1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count").

Finally, as noted in Section III (addressing Counts I and II), Section V (addressing Counts I, II and III) and Section VI (addressing Count V) *supra*, the lack of factual detail regarding material aspects of the claims Plaintiff attempts to bring is problematic because of

the pleading standards required by *Iqbal*, *Twombly* and their progeny; however, it also renders the Amended Complaint defective as a shotgun pleading. Thus, because Plaintiff fails to support her claims with factual allegations of clarity and precision such that FCTC may discern what Plaintiff is claiming it should be dismissed. *See*, *Byrne v. Nezhat*, 261 F.3d 1075, 1128-29 (11th Cir. 2001) (a complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading is a shotgun pleading and "[p]leadings of this nature are prohibited by Rule 8(a)(2)"); *Anderson v. Dist. Bd. of Trustees of Cent. Florida. Community College*, 77 F.3d 364, 366 (11th Cir. 1996) (noting that shotgun complaints are those that lack such "clarity and precision" that a responsive pleading may not be framed).

## CONCLUSION

For the foregoing reasons the Amended Complaint should be dismissed and, with respect to Count IV, dismissed with prejudice.

Dated this 22nd day of July, 2019.

        Respectfully submitted,

        */s/ Robert J. Sniffen*
        **ROBERT J. SNIFFEN**
        (Trial Counsel)
        Florida Bar Number: 0000795
        rsniffen@sniffenlaw.com

        **SNIFFEN & SPELLMAN, P.A.**
        123 North Monroe Street
        Tallahassee, Florida 32301
        Telephone: (850) 205-1996
        Facsimile: (850) 205-3004

        *Counsel for First Coast Technical College/St. Johns County School Board*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 22nd day of July, 2019, a true and correct copy of the foregoing was electronically filed in the US District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                                */s/ Robert J. Sniffen*
                                                **ROBERT J. SNIFFEN**