**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**DIA'MON DALLAS,**

      **Plaintiff,**

**v.**                           **Case No.: 3:19-cv-00567-MMH-JBT**

**FIRST COAST TECHNICAL COLLEGE;**
**CHRIS FORCE, Principal of First Coast**
**Technical College; DONNA GARY-DONOVAN**
**Assistant Principal of First Coast Technical**
**College, all in their official and individual**
**capacities,**

      **Defendants.**
_____/

**DEFENDANTS CHRIS FORCE'S AND DONNA GARY-DONOVAN'S**
**MOTION TO DISMISS AMENDED COMPLAINT (Doc. 7)**
**AND INTEGRATED MEMORANDUM OF LAW**

      Defendants, **CHRIS FORCE, in Her Official and Individual Capacities** ("Force")

and **DONNA GARY-DONOVAN, in Her Official and Individual Capacities** ("Gary-

Donovan") (collectively, the "Defendants"), by and through the undersigned counsel,

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and <u>M.D</u>. <u>Fla</u>. <u>Loc</u>. <u>R</u>.

3.01(a) and (h), file their Motion to Dismiss Plaintiff's Amended Complaint [*(Doc. 7)*] and

state as follows:

**I.**    **INTRODUCTION**

      1.    Plaintiff, **DIA'MON DALLAS** ("Dallas" or "Plaintiff"), filed this action on

May 14, 2019. *(Doc. 1)*. The initial Complaint was not served on the Defendants.

2.      Prior to service of the initial Complaint, on May 15, 2019, the Court issued *sua sponte* an order striking the initial Complaint as a shotgun pleading. *(Doc. 4)*. Thereafter, on May 24, 2019, Plaintiff filed her Amended Complaint. *(Doc. 7)*. Force and Gary-Donovan accepted service of the Amended Complaint on May 31, 2019. *(Doc. 8 and Doc. 10)*.

3.      The Amended Complaint contains five Counts, as follows:

> **Count I – Violation of the First Amendment – 42 U.S.C. § 1983 and 42 U.S.C. § 1988 – Punishment** *(All Defendants)*

> **Count II – Violation of the First Amendment - 42 U.S.C. § 1983 and 42 U.S.C. § 1988 – School Policies** *(All Defendants)*

> **Count III – Violation of Free Speech Rights – Article I, § 4 of the Florida Constitution** *(All Defendants)*

> **Count IV – Defendants Acted Beyond Their Authority Under Florida State Law, Florida Statutes Title XLVIII and F.S. § 1004.097** *(All Defendants)*

> **Count V – Plaintiff Was Adversely Affected by Defendants' Policy In Violation of Florida Stature § 790.33** *(All Defendants)*

## II.      FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT[1]

4.      For ease of the Court's reference and out of respect for the Court's time, pursuant to <u>Fed</u>. <u>R</u>. <u>Civ</u>. <u>P</u>. 10(c) Force and Gary-Donovan adopt and incorporate by reference the summary of the factual allegations set forth in Section II of Co-Defendant First Coast Technical College's Motion to Dismiss. *(Doc. 15 at pp. 2-3)*.

---

[1]   Force and Gary-Donovan dispute certain of the factual allegations contained in the Amended Complaint. However, all allegations are accepted as true for purposes of this Motion.

### III.    BASES FOR DISMISSAL

5.    The Amended Complaint is due to be dismissed on several grounds:

a.    The official capacity claims asserted by Plaintiff in all five Counts of the Amended Complaint are duplicative of the claims asserted against Defendants' employer; as such, all official capacity claims should be dismissed with prejudice. (*See*, § II, *infra, pp. 4-5*).

b.    <u>Count IV</u> is due to be dismissed with prejudice, since the conduct for which Plaintiff seeks protection occurred off-campus; thus, the Campus Free Expression Act, F.S. § 1004.097, does not apply. (*See*, § III, *infra, p. 5*).

c.    <u>Count I</u> and <u>Count II</u> are barred by qualified immunity. (*See*, § IV, *infra, pp. 6-15*).

d.    <u>Count I</u>, <u>Count II</u> and <u>Count III</u> should be dismissed inasmuch as Plaintiff has failed to attach the picture of the Facebook post on which she was tagged and has failed to allege facts describing the subject matter or object of the free speech in which she claims to have been engaged. (*See*, § V, *infra, p. 16*).

e.    <u>Count V</u> must also be dismissed since Plaintiff has failed to provide Defendants with fair notice of the specific policy that is purportedly subject to the Florida Legislature's preemption statute, F.S. 790.33 and why Defendants are liable for the existence and content of the policy. (*See*, § VI, *infra, p. 16*).

f.    Finally, the entire Amended Complaint is a shotgun pleading that offends the Eleventh Circuit's mandate that such pleadings be dismissed. (*See*, § VII, *infra, p. 16*).

## MEMORANDUM OF LAW

### I.     Standard of Review

Because the Court is well versed in the standards applicable to motions to dismiss, they are not restated here. Rather, the standards are interwoven throughout the various arguments set forth below where applicable.

### II.    Argument and Authority – Plaintiff May Not Maintain Official Capacity Claims Against Force and Gary-Donovan Because Such Claims are Duplicative of the Identical Claims Filed Against Their Employer *(Counts I and II/All Counts)*

The official capacity claims against Force and Gary-Donovan in their official capacities are the equivalent of the identical claims brought against the public entity by whom they are employed. *See*, *Cooper v. Dillon*, 403 F.3d 1208, 1221, n.8 (11th Cir. 2005); *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785, n.2 (1997); *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991).   It is well settled that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 690, n. 55 (1978).   On this point, the Supreme Court instructs:

> As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is *not* a suit against the official personally, for the real party in interest is the entity.

*Kentucky, DBA Bureau of State Police v. Graham*, 473 U.S. 159, 166 (1985) (internal citation omitted); *see also*, *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) ("In at least three recent cases arising under § 1983, we have plainly implied that a judgment against a public

servant "in his official capacity" imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond.  We now make that point explicit.").  Even if Plaintiff was to prevail on her official capacity claims against Force and/or Gary-Donovan, such a victory would simply result in the imposition of "liability on the entity that [the officer] represents." _Brandon_, 469 U.S. at 471; _see also_, _Cooper v. City of Starke, Fla._, Case No.: 3:10-cv-280-J-34MCR, 2011 WL 1100142 at *3 (M.D. Fla. March 23, 2011) ("As such, permitting Plaintiffs to pursue claims against both the City and the officers sued in their official capacities as defendants in this case would be redundant and needlessly confusing.") (citing _Busby_).

In this case, Plaintiff has asserted <u>identical</u> claims pursuant to 42 U.S.C. § 1983 against Force and Gary-Donovan in their official capacities, and their employer (the St. Johns County School Board, though incorrectly pled against First Coast Technical College). Accordingly, the official capacity claims against Defendants should be dismissed with prejudice.[2]

### III.   Argument and Authority – The Campus Free Expression Act – F.S. § 1004.097 – Does Not Apply to Off-Campus Conduct *(Count IV)*

For ease of the Court's reference and out of respect for the Court's time, pursuant to <u>Fed</u>. <u>R</u>. <u>Civ</u>. <u>P</u>. 10(c) Force and Gary-Donovan adopt and incorporate by reference the identical argument set forth in Section IV of Co-Defendant First Coast Technical College's Motion to Dismiss. *(Doc. 15 at pp. 10-11).*

---

[2]   While the cases cited in this Section address the most common scenario in which duplicative official capacity claims are asserted against a public official and an entity - that is, claims brought under 42 U.S.C. § 1983 - the same rationale may (and should) be applied to the remaining Counts contained in the Amended Complaint (Counts III, IV and V).

**IV.     Argument and Authority – Qualified Immunity Bars Plaintiff's Section 1983 Claims Brought Against Force and Gary-Donovan in Their Individual Capacities** *(Counts I and II)*

**A.     *Introductory Principles***

Plaintiff alleges the picture posted on Facebook on which she was tagged implicates her First Amendment speech rights. Plaintiff's First Amendment claims are barred by qualified immunity. While the issue of whether an individually-sued defendant is entitled to qualified immunity is often raised at the summary judgment stage, "the defense of qualified immunity may be raised and addressed in a motion to dismiss and will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Snider v. Jefferson State Community College*, 344 F.3d 1325, 1327 (11th Cir. 2003). The evaluation of qualified immunity is particularly appropriate for a motion to dismiss, since this defense confers immunity not only from ultimate liability, but also from the necessity of defending or participating in the lawsuit altogether. *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). Indeed, "[q]uestions of qualified immunity <u>must</u> be resolved at the earliest possible stages in litigation." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (emphasis added) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." *Gonzalez*, 325 F.3d at 1233.

**B.** **Application of Qualified Immunity Defense**

As this Court is aware, qualified immunity offers complete protection for individual government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The purpose of this immunity is to allow governmental officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). (internal citation in quotation omitted). A government official is entitled to immunity unless his act is so obviously wrong, in light of pre-existing law, that only a plainly incompetent official or one who was knowingly violating the law would have engaged in the misconduct. *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010) (quoting *Lassiter v. Alabama A&M University*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)). Application of qualified immunity to individually named defendants is the "rule, rather than an exception" and only in the exceptional case will government actors have no immunity. *Braddy v. Florida Dept. of Labor and Employment Security*, 133 F.3d 797, 801 (11th Cir. 1998) (emphasis added).

To be entitled to qualified immunity, a public official must first establish that her conduct was within the scope of her discretionary authority. *Lee*, 284 F.3d at 1194. If a discretionary function is identified, "the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004); *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir.

2004) (finding that once an official demonstrates that he was performing a discretionary function, the burden is on the plaintiff to prove that qualified immunity does not insulate the public official from liability).

With respect to the first prong of the qualified immunity defense, there are no allegations in the Amended Complaint establishing Force and Gary-Donovan were not acting within their discretionary authority. Plaintiff certainly does not allege Force or Gary-Donovan were acting outside the course and scope of their duties as Principal and Assistant Principal of FCTC. Thus, the burden shifts to Plaintiff to show that Force and Gary-Donovan are not entitled to qualified immunity.

To satisfy this burden, Plaintiff must show that: (1) Force and Gary-Donovan violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Generally, for a violation of a clearly established right to occur, the unlawfulness must be established by pre-existing case law which is sufficiently similar in facts to the facts in issue so as to say that a reasonable public officer would be on fair notice that a constitutional right was being violated. *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003).

### 1.     Violation of a Constitutional Right

Plaintiff has generally alleged violations of her First Amendment rights. As noted in the FCTC's Motion to Dismiss, incorporated into this Motion pursuant to Fed. R. Civ. P. 10(c), the Amended Complaint does not allege or even discuss what Plaintiff was purportedly trying to convey in the picture at issue. The picture is not described in or attached to the

Amended Complaint, but is included as **Exhibit 1** to this Motion.[3] The only specific point

objectively apparent from the picture is the wording at the top of the picture:

**She my Bonnie (emoji) I'm Her Clyde know we down to**
**Ride or Die (multiple emojis)**

While students do not "shed their constitutional rights to freedom of speech or

expression at the schoolhouse gate," _Tinker v. Des Moines Indep. Cmty. Sch. Dist._, 393 U.S.

503, 506, the constitutional rights of students in public school "are not automatically

coextensive with the rights of adults in other settings," _Bethel Sch. Dist. No. 403 v. Fraser_,

478 U.S. 675, 682 (1986). Instead, these rights must be applied in a manner consistent with

the "special characteristics of the school environment." _Tinker_, 393 U.S. at 506.

Thus, a school may regulate student speech if such speech "materially and

substantially disrupt[s] the work and discipline of the school." _Id._ at 513. This standard does

not require that the school authorities wait until an actual disruption occurs; rather, where

school authorities can "reasonably portend disruption" in light of the facts presented to them

in the particular situation, regulation of student expression is permissible. _Id._ at 514; _LaVine_

_v. Blaine Sch. Dist._, 257 F.3d 981, 989 (9th Cir.2001) ("_Tinker_ does not require school

officials to wait until disruption actually occurs before they may act."); _Lowery v._

_Euverard_, 497 F.3d 584, 596 (6th Cir.2007) ("[s]chool officials have an affirmative duty to

not only ameliorate the harmful effects of disruptions, but to prevent them from happening in

the first place."). The Supreme Court has also held that student speech that is vulgar and

---

[3] While a court reviewing a motion to dismiss is ordinarily limited in its review to the face of the complaint, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b) (6) dismissal." _Brooks v. Blue Cross and Blue Shield of Fla, Inc._, 116 F.3d 1364, 1369 (11th Cir.1997); _see also_, Fed. R. Civ. P. 10(c).

offensive may be restricted and that school codes of conduct need not be as detailed as criminal statutes to pass constitutional muster. *Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 685-686 (1986).

Notwithstanding the rules set forth in *Tinker*, *Fraser* and their progeny, simply stated nothing in the picture at issue, or the wording included thereon, contains constitutionally protected speech. Plaintiff is seen wearing a FCTC uniform, pointing a gun at the camera, while the male in the picture is holding what appears to be cash in one hand and a gun in the other. Moreover, nothing in the picture suggests the two are at a shooting range. They could have been on campus, at their home or in an abandoned field for all school administrators knew. The reference to Bonnie and Clyde appears to glorify the famous male-female crime duo who, after engaging in criminal acts and murders, were gunned down by law enforcement in 1934. *(See, FCTC Motion, Doc. 15 at p. 14).* In any event, there is no protected message or viewpoint expressed in the picture protected by the First Amendment.[4] Thus, dismissal of Counts I and II is required because Plaintiff cannot show the violation of a constitutional right.

_____

[4]   Plaintiff's allegations concerning the lack of disruption at the school is the proverbial red herring since as *Fraser* and numerous other cases instruct, the disruption or threat of disruption are not the only bases upon which student speech rights may be curtailed. Several cases from around the country involving students like Dallas who are in post-secondary professional programs may be disciplined for off-campus social media posts that violate the school's rules of professional conduct. *E.g.*, *Tatro v. University of Minnesota*, 816 N.W. 2d 509, 511 (Minn.2012) ("[W]e hold that a university does not violate the free speech rights of a student enrolled in a professional program when the university imposes sanctions for Facebook posts that violate academic program rules that are narrowly tailored and directly related to established professional conduct standards."). Thus, Plaintiff's contention that because she was involved in off-campus conduct, she was free to do as she chooses without consequence is simply wrong.

2.       **"Clearly Established Law"**

Even if the Court finds the picture to contain protected constitutional speech, Plaintiff cannot show that her suspension violated clearly established law. In determining whether the government actor has violated clearly established law, the court must determine whether the government official had fair warning that the act was clearly unconstitutional.  _Holloman_, 370 F.3d at 1278.  While there need not be a case "on all fours," with materially identical facts, "reasonably warning that the conduct at issue violated constitutional rights" is required. _Id_. at 1277-78.  This analysis not only looks to the general legal concepts at issue, but also to the application of those concepts to the facts currently under scrutiny because, as the Supreme Court has explained, "the salient question…is whether the state of the law [at the time of the events in question] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional. _Id_. at 1278 (citing _Hope v. Pelzer_, 536 U.S. 730, 741 (2002)).

For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that the official action in question violates that right. _See_, _Mitchell v. Forsythe_, 472 U.S. 511, 535 n.12 (1985).  The unlawfulness of the action <u>must be apparent</u> in light of pre-existing law.  _Anderson v. Creighton_, 483 U.S. 635, 640 (1987) (emphasis added).  "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." _Storck v. City of Coral Springs_, 354 F.3d 1307, 1314 (11th Cir. 2003). In a recent decision, the Supreme Court reiterated the level of scrutiny required when evaluating the actions of public officials under the "clearly established law" test:

11

> Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

*White v. Pauly*, —— U.S. ——, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (internal citations and quotations omitted).

The constitutionality of actions taken by school administrators in response to off-campus speech by students, particularly those in professional programs, is anything but clearly established. Not only can Plaintiff not find a case that would have placed the Defendants on clear notice that Plaintiff's suspension violated clearly established law, in reality, the opposite is true.

In *Hunt v. Bd. of Regents of the Univ. of New Mexico*, 338 F. Supp. 3d 1251 (D. N.M. 2018), a medical school student was disciplined for a Facebook post that violated the school's respectful campus and social media policies. *Id*. at 1256-57. Qualified immunity was raised in the initial responsive pleading: "The issue before the Court is whether—assuming Carroll violated Hunt's First Amendment right to post on Facebook by subjecting him to discipline—this right was clearly established in late 2012 and in 2013, when that discipline was imposed. As discussed below, the Court finds an absence of controlling authority that specifically prohibits Carroll's conduct." *Id*. at 1259.

The district court analyzed cases from multiple jurisdictions addressing enforcement of student conduct codes to students in the post-secondary professional school context to determine whether the individual capacity defendants violated clearly established law. *Id*. at 1262-64. Finding there were "a few cases dealing with the right to regulate online speech by

12

university or professional school students in an effort to enforce professional standards or university policies," [*Id*. at 1262] and after analyzing several cases, the court granted qualified immunity, finding that "[t]he absence of controlling authority that specifically prohibited Carroll's conduct is dispositive." *Id*. at 1264.

Among the cases analyzed by the district court in *Hunt* is an Eighth Circuit case, *Keefe v. Adams*, 840 F.3d 523 (8th Cir. 2016), that involved a nursing student who made statements on his personal Facebook page a fellow student found threatening. *Id*. at 526. The Director of Nursing confronted the student who posted the material, but the student was not receptive to the Director's concerns that the posts were unprofessional. *Id*. at 527. As a result, the student was removed from the nursing program for violating the nursing program's handbook, which stated that "students who fail to meet the moral, ethical, or professional behavioral standards of the nursing program are not eligible to progress in the nursing program," which included "transgression of professional boundaries" and "behavior unbecoming of the Nursing Profession." *Id*. at 528.  The Eighth Circuit noted that the Nurse's Association Code of Ethics "precludes any and all forms of prejudicial actions, any form of harassment or threatening behavior, or disregard for the effect of one's actions on others." *Id*.

The student-plaintiff's First Amendment claim was rejected by the Eighth Circuit, which found that "many courts have upheld enforcement of academy requirements of professionalism and fitness, particularly for a program training licensed medical professionals. Fitness to practice as a health care professional goes beyond satisfactory performance of academic course work." *Id*. at 530. The court went on to note that "teaching and enforcing viewpoint-neutral professional codes of ethics are a legitimate part of a

professional school's curriculum that do not, at least on their face, run afoul of the First Amendment." <u>Id</u>. The Court also observed that a student's conduct is one way in which he or she may act unprofessionally, but his or her speech (including online speech) is another and that school administrators in professional programs may require adherence to standards of professionalism, even for off-campus activities, if the administrator's actions are reasonably related to pedagogical concerns. <u>Id</u>. at 531.

The decision in <u>Yeasin v. Durham</u>, 224 F.Supp.3d 1194 (D. Kan. 2016), another case relied upon by the District Court of New Mexico in <u>Hunt</u>, is also instructive on this point. There, a university student was punished for off-campus speech communicated by social media regarding the student's former girlfriend because it violated the student code of conduct. <u>Id</u>. at 1199. Qualified immunity was granted based on the lack of clearly established law:

> <u>The law in this area is constantly developing</u>, and when Plaintiff was expelled in 2013, it was even more unclear what standards applied. This case can hardly be categorized as a clear case of a content-based restriction in violation of the First Amendment. Most importantly, <u>circuit courts have come to conflicting conclusions on whether a school can regulate off-campus, online student speech</u> where such speech could foreseeably cause a material disruption to the administration of the school. The Tenth Circuit has not addressed off-campus, online student speech at the public school or university level.

<u>Id</u>. at 1202-03.

Other cases recognize the evolving nature of a school's regulation of off-campus online speech. In several of these cases, the actions of school officials are upheld in the face of challenges brought pursuant to the First Amendment. <u>Tatro</u>, 816 N.W. 2d at 511 (holding quoted in footnote 4, *supra*); <u>Koeppel v. Romano</u>, 252 F. Supp. 3d 1310, 1324 (M.D. Fla.

2017), *aff'd sub nom.* <u>Doe v. Valencia Coll.</u>, 903 F.3d 1220 (11th Cir. 2018) ("Valencia has a compelling interest in proscribing conduct that affects its students, their safety, and their ability to learn in a safe and secure environment. Such an interest has been long supported by the Supreme Court, which has repeatedly emphasized the need for affirming the authority of the states and of school officials to regulate conduct in the nation's schools."); <u>Oyama v. Univ. of Hawaii</u>, 813 F. 3d 850, 868 (9th Cir. 2015) (affirming state university's decision to deny plaintiff admission to teaching program and rejecting First amendment challenge based on comments made by student about sexual relationships between teachers and underage students as well as disabled individuals); <u>Yoder v. Univ. of Louisville</u>, 526 Fed. Appx. 537, 544-45 (6th Cir. 2013) (granting qualified immunity in First Amendment case involving nursing student who blogged about patient and noting the absence of controlling authority prohibiting school from regulating off-campus, online speech); <u>Keeton v. Anderson-Wiley</u>, Case No.: CIV-101-099, 2012 WL 13163578 (S.D. Ga. June 22, 2012) (rejecting First Amendment challenge to counselor program student handbook used to discipline graduate student for statements deemed unprofessional by program administrators).

Because Plaintiff has no clearly established constitutional right that was violated by Defendants, Force and Gary-Donovan are entitled to qualified immunity. Therefore, dismissal with prejudice of the individual capacity claims against them is mandated.[5]

---

[5]   As the Court is well aware, this Motion may be converted to a motion for summary judgment if the Court determines that summary judgment is the more appropriate procedural vehicle by which to analyze and adjudicate the qualified immunity defense at this stage of the proceeding.

**V.    Argument and Authority – The Amended Complaint is Completely Devoid of Factual Allegations Placing Force and Gary-Donovan on Fair Notice of the Subject Matter or Object of the Purported Speech in Which Plaintiff Claims to Have Engaged** *(Counts I, III and III)*

For ease of the Court's reference and out of respect for the Court's time, pursuant to Fed. R. Civ. P. 10(c) Force and Gary-Donovan adopt and incorporate by reference the identical argument set forth in Section V of Co-Defendant First Coast Technical College's Motion to Dismiss. *(Doc. 15 at pp. 12-15)*.

**VI.    Argument and Authority – Count V Fails to Allege Sufficient Facts to State a Claim Under F.S. § 790.33** *(Count V)*

For ease of the Court's reference and out of respect for the Court's time, pursuant to Fed. R. Civ. P. 10(c) Force and Gary-Donovan adopt and incorporate by reference the identical argument set forth in Section VI of Co-Defendant First Coast Technical College's Motion to Dismiss. *(Doc. 15 at pp. 15-16)*.

**VII.    Argument and Authority - The Amended Complaint is an Impermissible Shotgun Pleading** *(All Counts)*

For ease of the Court's reference and out of respect for the Court's time, pursuant to Fed. R. Civ. P. 10(c) Force and Gary-Donovan adopt and incorporate by reference the identical argument set forth in Section VII of Co-Defendant First Coast Technical College's Motion to Dismiss. *(Doc. 15 at pp. 17-19)*.

<u>**CONCLUSION**</u>

For the foregoing reasons the Amended Complaint should be dismissed.

Dated this 22nd day of July, 2019.

Respectfully submitted,

/s/ Robert J. Sniffen
**ROBERT J. SNIFFEN**
(Trial Counsel)
Florida Bar Number: 0000795
rsniffen@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for Chris Force in Her Official and Individual Capacities and Donna Gary-Donovan in Her Official and Individual Capacities*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 22nd day of July, 2019, a true and correct copy of the foregoing was electronically filed in the US District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Robert J. Sniffen
**ROBERT J. SNIFFEN**